By the Court, Cowen, J.
The only ground on.which the common pleas reversed the judgment- was the omission of the justice to enter it in his docket until after the lapse of two or three days from the time when the verdict was pronounced. There may be some question whether the return sufficiently negatives the judgment being entered in the docket forthwith ;■ but admitting that it does, is the omission such an error as calls for the reversal of the judgment and other proceedings 1 Immediately on the verdict being rendered, the justice entered it with the judgment in his minutes, which contained all the proceedings, and were kept on- file. He thinks they were not transcribed into his docket till two or three days after.
Independently of the statute, the case would not- be attended with the least difficulty: The law itself declares what the judgment shall be on a verdict being found by a jury, or by a justice acting in the place of a jury. And though the court in declaring the judgment may word it wrongly, the law will regard the declaration- as it should be, and make it enure accordingly- for all purposes. (Elwell v. Mc Queen, 10 Wend. 519, 521 to 523 and the cases there cited.)- This shows the formal entry of the judgment to be quite an unimportant matter; and *40 where it is necessary for the purposes of evidence, it may be made at any time. This is so even where a full record of conviction is necessary. (Massy v. Johnson, 12 East, 67, 81, 2.) In the case cited the magistrate was allowed to draw up a record for his own protection, after he had committed the party. The same point was held in Gray v. Cookson, (16 East, 13,20,) the record being drawn up after the commencement of an action, and some six months after the judgment rendered. So in respect to a return to a certiorari brought on the ground of informality, the justice may, for the purpose of sustaining the proceeding, draw out an amended entry according to the fact, more formal and perfect than the first. (The King v. Barker, 1 East, 186, 188.) Lord Kenyon, Oh. J. here said: “ If the magistrate has done no more than return the conviction in a more formal shape, instead of sending it up in the informal manner in which it was first drawn, and supposing that the facts as they really happened will warrant him in the return he has now made, the contrary of which is not imputed, I am of opinion that it was not only legal but laudable in him to do as he has done, and he would have done wrong if he had acted otherwise. It is a matter of constant experience for magistrates to take minutes of their proceedings, without attending to the precise form of them at the time when they pronounce their judgment, to serve as memorandums for them to draw up a more formal statement of them afterwards to be returned to the sessions; and it is by no means unusual to draw up the conviction in point of form after the penalty has been levied under the judgment. Nor is there any legal objection to this method, provided the facts will warrant them in stating what they do. It is no answer to say that a party convicted may be thereby induced to incur an unnecessary expense in suing out a certiorari to' get rid of an informal conviction; for a mere informality in the manner of drawing up the conviction ought not to be the inducement for removing it into this court, but some substantial defect in the justice and legality of the proceeding.” (Vid. also Selwood v. Mount, 9 Carr. & Payne, 75.) In Matthews v. Houghton, (2 Fairf. 377,) the justice had continued the cause on his docket *41 to August 1st, 1828, without indicating either verdict or judgment. He then went out of office, and, three or four years after, wrote up the book to judgment. Mellen, Ch. J. said: “ A magistrate does not act judicially in making up and completing his record. In doing this, he performs himself what this court does through the agency of their clerk. It is a mere ministerial act. The justice adjourned to August 1st, 1828, on which day he made his decision.” The proceeding was held to be regular.
In the case at bar the original minutes were made pari passu with the progress of the cause; and the whole transcribed into the docket, within two or three days. The objection is hypercritical in the extreme, and what the common law would, as we have seen, have entirely disregarded.
The defendant in error is therefore driven to a reliance on the 2 it. /S'. 177, § 124, 2d ad., which directs that in certain cases, one of which is that of a verdict, the justice shall forthwith render judgment and enter the same in his docket. Was the omission to copy the notes into the docket such a judicial error as vitiated the whole proceeding I I should think most clearly it was not. The case of Watson v. Davis, (19 Wend. 371,) the only case relied on, turned upon a principle entirely different. When the cause is heard by the justice himself, he must terminate his judicial labor in the matter within four days. Mr. Justice Bronson says, the amount was not settled in the mind of the justice until the four days had elapsed. Of course it was not entered in the docket till after that time. The provision as to the docket is incidentally mentioned in reciting the statute ; but the emphatic ground was the omission to decide. There can be no judgment even by legal implication, neither in substance nor in form, till a judicial conclusion is made by the justice. This is a condition, the execution of which being limited to four days by the very statute which confers the power to render judgment, it is at least error, if not more, to pass the time.(a) It is truly said that the statute is in terms equally imperative *42 as to the entry of the judgment upon the docket; and in the case before us it directed that the judgment should be entered forthwith. But the nature of the proceeding is, as we have seen, entirely different in the two cases. Here it was merely ministerial and formal. All judicial action had been completed. The verdict was rendered, and the judgment followed. Both the law and the magistrate concurred in the proper action upon the verdict, within the proper time, and the judgment itself was entered. . The statute is equally peremptory in respect to all the entries on the docket. “ Every justice &c., shall keep a book, in which he shall enter” &c., specifying fifteen particulars, some before and some after judgment. (2 R. /S'. 195, 6, § 243,2d ed.) Six of them are after judgment, beginning with the entry of the judgment. Suppose any or all to be omitted; or even no book to be kept. The whole is ministerial; and the statute touching the docket and its minutiae merely directory. Its language being imperative does not make it any thing more. Almost every directory statute is imperative in its words. One entry is of the execution; another of the return &c. The statute peremptorily commands these entries. Yet it would he a strange application of it, should we hold the judgment reversible for the omission of either. The entry of the judgment is no more a part of it than the instances put. It is mere evidence of the judgment, as it was at common law; valid, though made at any time, and open to correction according to the truth. To say that a clerical defect or omission in any of the .fifteen docket particulars, should be ground of reversal, would be intolerable. How far does it accord with another provision, (id. 185, § 181,) directing the court, on certiorari, to give judgment as the right of the matter may appeal’, without regarding technical omissions, imperfections or defects in the proceedings, which do not affect the merits 1
On the whole, we are of opinion that the judgment of the common pleas must be reversed, and that of the justice affirmed.
Judgment reversed.

 See Young v. Rummell, (5 Hill, 60.)